**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| SEBASTIAN A. CAMPBELL, | |
| Plaintiff, | |
| v. | Civil Action No.:  SAG-24-3572 |
| ROBERT GREEN, et al., | |
| Defendants. | |

**MEMORANDUM OPINION**

Plaintiff Sebastian A. Campbell filed this lawsuit against Defendants Robert Green, Secretary of the Maryland Department of Public Safety and Correctional Services ("DPSCS"); Allen Gang, Warden of Jessup Correctional Institution ("JCI"); Antoinette Washington, Chief of Security; Lt. Cody Withrow; Lt. Earl Brown, Corrections Officer; Sgt. Eric Walker; Ofc. Yacoub Adesiyan; and Ofc. Alexander Jator (collectively, "Defendants").  ECF No. 1.  Defendants filed a motion to dismiss Campbell's Complaint, or in the alternative, for summary judgment.  ECF No. 12.  Campbell responded to Defendants' Motion with a motion styled "Rule 56(d) Motion," arguing that he cannot properly oppose the motion without discovery.  ECF No. 16.  Campbell's Rule 56(d) motion includes arguments in opposition to Defendants' Motion and will be construed as an opposition response in addition to a motion for discovery pursuant to Rule 56(d).  Defendants opposed Campbell's discovery motion, and Campbell replied.[1]  ECF Nos. 19, 20.  The Court has reviewed the briefing, and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2025).  For the reasons that follow, Defendants' Motion, ECF No. 12, shall be granted in part and denied in part. The remaining non-dispositive motions are addressed individually below.

---

[1] Defendants also filed Motions for Extension of Time to Respond to the Complaint and to Campbell's discovery motion, ECF 10 and 18, which shall be granted *nunc pro tunc*.

## I.    BACKGROUND

**A.    Complaint Allegations**

During the months of May and June of 2020, Campbell was incarcerated at Jessup Correctional Institution ("JCI") and confined in disciplinary segregation in cell D-C-303.  ECF No. 1 at 4.  Campbell alleges that during this time-period, inmates on disciplinary segregation, excluding himself, were regularly acting out due to the "imminent threat of death from COVID-19, and the sweltering heat."  *Id*. at 4.  On May 19, 2020, Campbell wrote letters to defendants Warden Gang and Chief Washington complaining that officers were "allowing inmate Zachary Watson to go door-to-door collecting containers of urine, feces, and unknown liquid substances, and [to] repeatedly bombard inmate Kenneth Walker with the noxious substances through [Watson's] open slot.  The officer[s] were literally laughing and cheering Watson on as he committed this assault.  Warden Gang and Chief Washington responded by assigning a lieutenant to interview Plaintiff . . . . Ultimately, inmate Watson was written an infraction for his conduct on that day . . . Plaintiff was informed by the lieutenant that the officer involved would also be disciplined."  *Id*. at 3.  After receiving the infraction, Watson "began vehemently declaring that there were 'snitches' on the tier and, specifically, inmate Walker and 'those motherfuckers down there,' (indicating inmates in cells near the front of the tier were 'rats.')  Plaintiff was confined in the third cell from the door."  *Id*. at 4.

On the afternoon of June 14, 2020, "inmate Watson and several other inmates continued their rant to have the 'snitches' removed from the tier or there would be 'no peace.'  From inside their cells they doused officers trying to close the slots with an unknown liquid substance, and later in the evening, Watson started a small fire which was quickly extinguished."  ECF No. 1 at 4.  "Defendants [Lts.] Withrow and Brown assumed command of DSeg, arriving on the tier after all

2

remnants of the fire had been quelled.  The tier was calm as defendant [Lt.] Withrow approached Zachary Watson's cell and held a conversation with him through the door." *Id*.  Campbell alleges that Lt. Withrow "apparently, signaled to the officer in the control center to open inmate Watson's cell door, allowing Watson to emerge on to the tier without handcuffs or a staff escort." *Id*. Campbell suggests that by allowing Watson to leave his cell unrestrained, Lt. Withrow "at best, committed gross negligence" and "[a]t worst, … directly participated in an act of retaliation against Plaintiff for informing on the misconduct of the officers under his command." *Id*. at 5.

When Watson left his cell, he "called out to his associates to prepare 'shit bags' (zip-lock bags containing feces and other toxic or caustic materials) so that he could 'shit bomb' the snitches (explode the mixture into the cells of believed informants)." ECF No. 1 at 5.  Campbell alleges that Lts. Withrow and Brown failed to protect him and other inmates from Watson's assault, but instead "calmly sat on the desk at the front of the tier" while Watson assaulted other inmates "over a half-an-hour period." *Id*.  Lts. Withrow and Brown "deployed a short burst of pepper spray to protect themselves when inmate Watson approached in their direction." *Id*.  Campbell was directly assaulted by a bomb, "while he was going to the front of his cell to look out of the window." *Id*. at 6.

Campbell alleges that the bomb burned his eyes and nose, and that he asked Lts. Withrow and Brown for medical attention, but they immediately left the tier.  ECF No. 1 at 6.  Campbell alleges that he "was forced to languish in feces, urine, and other unknown liquid substances for hours with his eyes and nose burning." *Id*.  He alleges that the following morning, he complained to defendants Sgt. Walker, Ofc. Jator, and Ofc. Adesiyan that his eyes were damaged and he was in pain, but they simply told him to fill out a medical request form without providing him with a form. *Id*. at 7.  Campbell states that he did not see medical staff until June 23, 2020, at which point

"[i]t was determined . . . that Plaintiff's vision was far below normal and remains impaired to this day." *Id*. Campbell alleges that he "was not provided cleaning products or a shower for nearly 36 hours," and that "defendants have apparently forged a 'Release of Responsibility' form in an effort to circumvent liability." *Id*.

**B.    Administrative and Procedural Background**

Campbell filed a Request for Administrative Procedure ("ARP") regarding the incident on June 15, 2020. ECF No. 12-3 at 78-79. The ARP, assigned case number JCI-0741-20, was dismissed for procedural reasons, with instructions to sign and date the ARP and resubmit it by July 4, 2020. *Id*. at 78. Campbell timely resubmitted the signed ARP, and the Warden responded by dismissing the ARP on September 1, 2020. *Id*. at 83-85. Prior to the Warden's response, however, Campbell appealed the ARP to the Commissioner of Correction on July 30, 2020, because he had not received a timely response from the Warden. *Id*. at 87. On October 30, 2020, the Commissioner found Campbell's ARP meritorious in part, in that the Warden failed to timely respond to the ARP; the ARP was otherwise dismissed because Campbell "failed to substantiate [his] claim of staff negligence due to fires being set by inmates." *Id*. at 91. However, the Commissioner's response was also untimely, therefore Campbell filed a grievance with the Incarcerated Individual Grievance Office ("IIGO")[2] dated October 28, 2020, and stamped "received" on December 8, 2020. ECF No. 12-6 at 67. On January 20, 2021, the IIGO advised Campbell that he had failed to include a copy of the appeal and response from the Commissioner and gave him thirty days in which to submit the missing paperwork. *Id*. at 65-66. On February 9, 2021, Campbell responded, stating that although he had enclosed the required documents in his initial package, he was forwarding new copies of the requested documents. *Id*. at 59. Campbell's

---

[2] Previously the Inmate Grievance Office ("IGO").

response and documents were received by the IIGO on February 16, 2021. *Id*. On April 15, 2021, Campbell wrote to the IIGO inquiring about the status of his grievance, noting that he had submitted the required documents twice and had not yet received a decision. *Id*. at 58. Campbell specifically advised that he intended to seek judicial review but cannot do so without a written notice of the IIGO's decision. *Id*. at 58.

On November 24, 2021, the IIGO issued its Preliminary Review finding that a "sufficient dispute exists" and referring the matter to the Office of Administrative Hearings ("OAH") for further proceedings. ECF No. 12-6 at 51-53. On December 1, 2021, a Notice was issued scheduling a hearing on the matter for February 23, 2022. *Id*. at 50. On December 29, 2021, the IIGO received Campbell's objections to the Summary of Grievance and Referral as well as his Request for Witnesses, Documents, Records, and Physical Evidence. *Id*. at 44-47. However, on February 23, 2022, the ALJ postponed the hearing to June 16, 2022, because "the request seems to be lost." *Id*. at 41.

On March 25, 2022, the IIGO issued a Supplemental Prehearing Order addressing Campbell's request for discovery and amendments; the Order granted Campbell's request for the entire record of his ARP and denied all other requests including requests for medical records, video surveillance, Watson's disciplinary records, and the testimony of JCI's chief of security. ECF No. 12-6 at 34. The Order stated that Watson's disciplinary records could not be provided because the IIGO was unable to identify him without a first name or DOC number.[3] *Id*. On the date of the scheduled hearing, June 16, 2022, the ALJ postponed the hearing again due to the IIGO's failure to produce the medical records and Watson's records. *Id*. at 28. On June 29, 2022, the IIGO issued

---

[3] JCI records regarding the June 14, 2020, incident, including the serious incident reports, inmate disciplinary records, and IID investigative records make clear that the "Watson" named by Campbell is Zachary Watson. *See*, *e.g.*, ECF 12-1 at 7, 8, 11, 14, 25,

its second supplemental prehearing order granting Campbell's request for his medical records and denying the request for Watson's records because the inmate by the name of "Brandon Watson" was released on January 8, 2019. *Id*. at 27. The hearing was finally held on September 21, 2022. *Id*. at 5-19, 26-27. The ALJ issued his decision dismissing Campbell's grievance on December 5, 2022. Campbell appealed to the Circuit Court for Allegany County, Maryland, which affirmed the ALJ's decision on August 7, 2023.[4] ECF No. 12-8.

While his case was pending before the OAH, Campbell filed a Complaint in this Court on March 15, 2022, regarding the incident on June 14, 2020. *Campbell v. Green, et al.*, Case No. SAG-22-cv-636 (D. Md.) at ECF No. 1.[5] The claims were the same as those brought in the instant case, and the Complaint was dismissed without prejudice for failure to exhaust administrative remedies on March 8, 2024. *Id*. at ECF No. 1, 59-60. Campbell then filed the instant Complaint on December 10, 2024. ECF No. 1.

### STANDARD OF REVIEW

As permitted by Rule 12(d), Defendants seek dismissal pursuant to Rule 12(b)(6) or, in the alternative, summary judgment pursuant to Rule 56. They have submitted documentary and other evidence in support. ECF Nos. 12-3 through 12-11.

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the

---

[4] The public docket submitted by Defendants shows that a video hearing was held on July 14, 2023, in the Circuit Court, but there is no transcript or other information about what occurred at that hearing. ECF No. 12-10 at 2.

[5] Defendants refer to this case as "*Campbell I*" and the instant case as "*Campbell II*." ECF No. 12-1 at 6, 8.

elements of the claim.  However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a) (emphases added).  "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)).  "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247–48 (emphasis in original).  The Court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568–69 (4th Cir. 2015).  At the same time, the Court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

Defendants' Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56(a).  A motion styled in this manner implicates the Court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure.  *See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011).  Conversion of a motion to dismiss to one for summary judgment under Rule 12(d) is

permissible where a plaintiff has "actual notice" that the motion may be disposed of as one for summary judgment. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for a court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; a court "does not have an obligation to notify parties of the obvious." *Laughlin*, 149 F.3d at 261. Because DPSCS Defendants filed their motion styled as a motion to dismiss, or in the alternative, for summary judgment, Campbell was on notice that the Court could treat the Motion as one for summary judgment and rule on that basis.

Summary judgment typically is not granted "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448–49 (4th Cir. 2011). However, "where matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment" under Rule 12(d) as long as all parties "have a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244-245 (4th Cir. 2002). "[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A nonmoving party's Rule 56(d) request for additional discovery is properly denied

8

"where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports,* 914 F.3d 866, 874-75 (4th Cir. 2019); *Gordon v. CIGNA Corp.,* 890 F.3d 463, 479 (4th Cir. 2018); *Amirmokri v. Abraham,* 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x 274 (4th Cir. 2008), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (citations omitted). But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. And, a court "should hesitate before denying a Rule 56(d) motion when the nonmovant seeks necessary information possessed only by the movant." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

In response to Defendants' Motion, Campbell argues that it is premature to resolve the Motion as he has not had the opportunity to engage in discovery, and he has provided the requisite declarations in support of his requests pursuant to Fed. R. Civ. P. 56(d). ECF No. 16. As previously noted, the Rule 56(d) Motion reads largely as an opposition response to Defendants' Motion but also argues that discovery is required in order to properly oppose the Motion. To the extent that Campbell seeks discovery with regard to his medical claims, the motion will be denied because the medical claims must be dismissed for reasons set forth below.

As to his failure to protect claims, Campbell asserts that the video surveillance of the tier on the date of the incident is pivotal to resolution of a material fact that cannot be resolved on the

current record before this Court.  This Court agrees that there is not sufficient evidence in the record at this time to merit a ruling on summary judgment as outlined below and therefore, the motion for discovery will be granted as to this claim.

## DISCUSSION

Defendants move to dismiss the Complaint, or in the alternative for summary judgment, arguing that 1) Defendants in their official capacities are entitled to immunity under the Eleventh Amendment; 2) Campbell's claims are barred by res judicata and collateral estoppel; 3) the Complaint fails to state a claim for gross negligence and retaliation; 4) the Complaint fails to allege the personal participation or supervisory liability of Defendants Green, Gang, and Washington; 4) Defendants did not fail to protect Campbell from harm; 5) Defendants did not fail to provide Campbell with adequate medical care; 6) Defendants are entitled to qualified immunity; and 7) Campbell's claims are barred by the statute of limitations and the doctrine of laches.  ECF No. 12-1 at 2-3.

### A.    Official Capacity Claims

Under the Eleventh Amendment to the United States Constitution, a state, its agencies and departments are immune from suits in federal court brought by its citizens or the citizens of another state, unless it consents.  *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  "It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Id*., citing *Florida Dept of Health & Rehab. Servs. v. Fla. Nursing Home Assn.,* 450 U.S. 147 (1981) (*per curiam*).  While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't § 12-202(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court.  "A State's

10

constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued." *Pennhurst State School & Hosp.*, 465 U.S. at 100 (emphasis in original).  To the extent that Campbell is suing any or all of the Defendants in their official capacities, those claims must be dismissed.

### B.    Statute of Limitations Defense

Defendants assert the affirmative defense that Campbell's Complaint is barred by the statute of limitations. ECF No. 12-1 at 56-71.  "Section 1983 provides a federal cause of action, but in several respects relevant here, federal law looks to the law of the State in which the cause of action arose. This is so for the length of the statute of limitations: it is that which the State provides for personal-injury torts." *Wallace v. Kato*, 549 U.S. 384, 387 (2007) (citing *Owens v. Okure*, 488 U.S. 235, 249–50 (1989)). In Maryland, unless otherwise provided in a different provision of the Maryland Code, the applicable statute of limitations is three years from the date of the occurrence. *See* Md. Code Ann., Cts & Jud. Proc. Code § 5-101. The three year statute of limitations therefore applies to Campbell's federal civil rights claims.

The question of when a cause of action has accrued under 42 U.S.C. § 1983 is a question of federal law. *Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951, 955 (4th Cir. 1995) (en banc). The date of accrual occurs "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Id.*

The Court reviews the facts to determine the applicable dates. The parties agree that the incident at issue took place on June 14, 2020. ECF No. 1 at 4; ECF No. 12-1 at 13.  Campbell's Complaint was received for filing on December 10, 2024, approximately four and a half years after the incident itself took place, well beyond the three-year statute of limitations.  ECF No. 1.

The Court, however, must allow for equitable tolling of the statute of limitations during the time a prisoner is exhausting administrative remedies. *Battle v. Ledford*, 912 F.3d 708, 719–20

11

(4th Cir. 2019).  The Prisoner Litigation Reform Act ("PLRA") provides, in pertinent part: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).

The Maryland Department of Public Safety and Correctional Services ("DPSCS") has an established "administrative remedy procedure" ("ARP") for use by Maryland State prisoners for "inmate complaint resolution."  *See generally* Md. Code Ann., Corr. Servs. ("C.S."), § 10-201 *et seq.*; Md. Code Regs. ("COMAR") 12.07.01B(1) (defining ARP).

The ARP process consists of multiple steps. For the first step, a prisoner is required to file his initial ARP request with his facility's "managing official," COMAR 12.02.28.05(D)(1), which is defined by COMAR 12.02.28.02(B)(14) as "the warden or other individual responsible for management of the correctional facility" and defined under C.S. § 1-101(m) "as the administrator, director, warden, superintendent, sheriff, or other individual responsible for the management of a correctional facility."  Moreover, the ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later.  COMAR 12.02.28.09(B).

The second step in the ARP process occurs if the managing official denies a prisoner's initial ARP or fails to respond to the ARP within the established time frame.  The prisoner has 30 days to file an appeal to the Commissioner of Correction.  COMAR 12.02.28.14(B)(5).

If the Commissioner of Correction denies an appeal, the prisoner has 30 days to file a grievance with the IIGO.  COMAR 12.02.28.18; C.S. § 10-206(a); COMAR 12.07.01.05(B).[6] When filing with the IIGO, a prisoner is required to include copies of the following:  the initial

---

[6] If the Commissioner fails to respond, the grievant shall file an appeal within 30 days of the date the response was due.  COMAR 12.07.01.05(B)(2).

12

request for administrative remedy, the warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Correction, and a copy of the Commissioner's response.  COMAR 12.07.01.04(B)(9)(a).

If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it "without a hearing …."  C.S. § 10-207(b)(1); *see also* COMAR 12.07.01.06(B).  An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review.  C.S. § 10-207(b)(2)(ii).  However, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings.  *See* C.S. § 10-208; COMAR 12.07.01.07–.08.  The conduct of such hearings is governed by statute.  *See* C.S. § 10-208; COMAR 12.07.01.07(D); *see also* Md. Code Ann., State Gov't, § 10-206(a)(1).

A decision of the administrative law judge denying all relief to the inmate is considered a final agency determination.  C.S. § 10-209(b)(1)(ii); COMAR 12.07.01.10(A)(2).  However, if the ALJ concludes that the inmate's complaint is wholly or partly meritorious, the decision constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the administrative law judge.  *See* C.S. §§ 10-209(b)(2), (c); COMAR 12.07.01.10(B).

The statute provides for judicial review.  C.S. § 10-210.  But "[a] court may not consider an individual's grievance that is within the jurisdiction of the [Inmate Grievance] Office or the Office of Administrative Hearings unless the individual has exhausted the remedies provided" in C.S. §§ 10-201 through 10-210.

Defendants acknowledge that Campbell pursued his administrative remedies following the June 14, 2020 incident, which were ultimately exhausted on December 5, 2022 when the ALJ

13

issued his decision dismissing his grievance. ECF No. 12-1 at 58. They also acknowledge the Fourth Circuit's ruling in *Battle*, finding that the Court must allow for equitable tolling of the statute of limitations during the time a prisoner is exhausting administrative remedies. *Battle*, 912 F.3d at 719–20. Nonetheless, Defendants argue that although Campbell met all requirements of the administrative exhaustion process, he was still not sufficiently diligent in pursuing those remedies to be entitled to equitable tolling. ECF No. 12-1 at 63-66. Specifically, Defendants contend that Campbell was not sufficiently diligent because he only wrote one letter to the IIGO inquiring about the status of his grievance. *Id*. at 64. Defendants state that "Plaintiff arguably pursued his administrative remedies with reasonable diligence from June 15, 2020, to approximately April 21, 2021, when he sent a follow-up letter to Deputy Director Robin Woolford of the IIGO inquiring about the status of his administrative remedy appeal . . . The IIGO records reflect that Plaintiff did not follow up after this communication for nearly eight months, until after the IIGO issued a Preliminary Review on November 24, 2021." *Id*. at 64-65 (emphasis in original); *see also* ECF No. 12-6 at 52.

Defendants' argument that Campbell should not be given the benefit of equitable tolling because he failed to repeatedly inquire about the status of his case is unavailing. Campbell properly and timely completed each step of the administrative remedy process. He responded promptly to all requests for additional information. He filed objections and requests for evidence in response to the IIGO's preliminary orders. When he did not receive a prompt response to his grievance from the IIGO, he wrote a letter inquiring as to its status and advising that he was actively seeking a final written decision. The evidence is clear that Campbell very actively pursued his administrative remedies. The Fourth Circuit has directed that equitable tolling be applied while prisoners are exhausting their administrative remedies, and the Court is not inclined to ignore that

precedent because a prisoner who properly and timely took every step required in the administrative process failed to repeatedly "follow up." Thus, the three-year statute of limitations was tolled between June 20, 2020, when Campbell filed his initial ARP and December 4, 2022, when final order was issued.

Defendants next argue that Campbell is not entitled to equitable tolling because he was not sufficiently diligent in filing his Complaint subsequent to the issuance of the ALJ's decision on December 5, 2022, which completed his exhaustion of administrative remedies. ECF No. 12-1 at 63-64. Specifically, Defendants contend that Campbell could have filed his Complaint within the seven months that remained between the ALJ's ruling on December 4, 2022 and June 14, 2023 when the statute of limitations would have expired had administrative exhaustion not been required. ECF No. 12-1 at 66. This argument is without merit. First, Campbell is a pro se prisoner litigant, which comes with any number of circumstances which may prevent otherwise expedient filing. Second, Campbell would have been right to assume that equitable tolling applied, and he was not expected to file within the original statute of limitations. Third, *Campbell I* was pending from March 15, 2022 to March 8, 2024; within three months of the ruling in *Campbell I*, Campbell attempted to file his Complaint in *Campbell II* on June 3, 2024 but it was misdocketed; Campbell attempted to resolve the docketing error twice; and Campbell ultimately resubmitted *Campbell II* on December 4, 2024. This history does not reflect a lack of diligence.

The statute of limitations was properly tolled during the pendency of the administrative process from June 20, 2020 to December 4, 2022, and there is no reason to deny Campbell the benefit of equitable tolling in this case. Therefore, his December 10, 2024 Complaint was timely filed.

B.      **Res Judicata and Collateral Estoppel**

Defendants raise the affirmative defenses that Campbell's claims are barred by the doctrine of res judicata and/or collateral estoppel, due to the claims having been addressed by an Administrative Law Judge and then affirmed by the Circuit Court as well as similar claims having been addressed by this Court in a case filed by another similarly situated inmate. ECF No. 12-1 at 26-31.

The doctrine of res judicata, or "claim preclusion," was "designed to protect 'litigants from the burden of relitigating an identical issue with the same party or his privy and [to promote] judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979); *see also Montana v. United States*, 440 U.S. 147, 153-54 (1979) (recognizing that re judicata avoids the "expense and vexation attending multiple lawsuits, conserves judicial ersources," and avoids "inconsistent decisions"). Application of res judicata under Maryland law requires three conditions: "(1) the parties in the present litigation are the same or in privity with the parties to the earlier litigation; (2) the claim presented in the current action is identical to that determined or that which could have been raised and determined in the prior litigation; and (3) there was a final judgment on the mertis in the prior litigation." *Cochran v. Griffith Energy Services, Inc.*, 426 Md. 134, 140 (2012); *accord Powell v. Breslin*, 430 Md. 52, 63-64 (2013).

Here, res judicata is not applicable because the parties are not "the same or in privity with the parties to the earlier litigation." *Cochran*, 426 Md. at 140. Campbell's grievance proceeding was against the Division of Correction rather than the individual officers named in the Complaint. ECF No. 12-6 at 5. No Defendants were present at the OAH hearing; the Division of Correction was represented by a non-party, Case Manager II Eric Nichols. *Id*. at 10. Defendants argue that they are in privity with their employer, the Division of Correction. ECF No. 12-1 at 30 (citing

16

*deLeon v. Slear*, 328 Md. 569, 587-99 (1992).  However, the Fourth Circuit has held that "a government official in his official capacity is not in privity with himself in his individual capacity for purposes of res judicata."  *Andrews v. Daw*, 201 F.3d 521, 546 (4th Cir. 2000).  To the extent that any Defendant is in privity with their employer, the Division of Correction, in their official capacity, they are entitled to Eleventh Amendment immunity and any claims against them in their official capacities are dismissed on that basis; therefore, the matter of res judicata is moot.  In their individual capacities, however, there is no privity and res judicata is inapplicable.

The doctrine of collateral estoppel is similar to res judicata but produces a different result. Under collateral estoppel, issues of fact or law that have been conclusively determined in a previous lawsuit cannot be litigated in subsequent lawsuits brought by the same party.  *In re Microsoft Corp.*, 355 F.3d 322, 326 (4th Cir. 2004).  Collateral estoppel applies if (l) the issue "is identical to the one previously litigated;" (2) the issue "was actually resolved in the prior proceeding;" (3) the issue "was critical and necessary to the judgment in the prior proceeding"; (4) the prior judgment is final and valid; and (5) the party "to be foreclosed by the prior resolution of the issue" had "a full and fair opportunity to litigate the issue" in the prior proceeding.  *Id.*

Under 28 U.S.C. § 1738, this Court is generally required to accord state court judgments affirming state administrative agency decisions the same issue and claim preclusion effect as they would be entitled in the state courts where the decision was rendered.   "[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."  *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984).  Thus, if a Maryland state court would be precluded from considering Campbell's claims based on the state court's decision rejecting his claim, this Court is similarly precluded.  "Under Maryland law, preclusion principles apply to the judgment of a

court which affirms or reverses administrative determinations, *Esslinger v. Balt. City*, 622 A.2d 774, 781 (Md. Ct. Spec. App. 1993), and a party will be collaterally estopped from re-litigating issues decided in such an adjudication where: (1) the issue raised in the prior action is identical with the issue presented in the action in question; (2) there is a final prior judgment on the merits; and (3) the party against whom estoppel is asserted was a party to the prior litigation." *Batts v. Lee*, 949 F. Supp. 1229, 1234 (D. Md. 1996), citing *Alston v. Robinson*, 791 F. Supp. 569, 578 (Md. 1992), *see also Haskins v. Hawk*, 2013 WL 1314194, *18 (D. Md. 2013) ("regardless of whether an administrative determination is entitled to collateral estoppel effect, 'it is crystal clear that a final judgment of a circuit court affirming [or reversing] a decision of an administrative agency . . . is entitled to full preclusive effect.'").

Here, the ALJ considered the following issues: (1) whether the DOC failed to provide Campbell with a shower, cleaning supplies, or medical attention following the assault on June 14, 2020; (2) whether the "acts or omissions of DOC personnel on or after the June 14, 2020 violated Campbell's rights under the Eighth Amendment; and (3) whether Campbell sustained any injury as a result of DOC negligence. ECF No. 12-6 at 9-10.

### 1. Medical Claim

In his Complaint, Campbell alleges that "the morning after the assault, [he] specifically advised defendants Walker, Jator, and Adesiyan that his eyes had been severely damaged; that he was in pain; that his vision seemed to be deteriorating rapidly; and, he was in desperate fear that he'd been infected with COVID or some other disease," but that each of them failed to take action other than advising him to file a medical request form without providing him such form. ECF No. 1 at 7. Campbell further alleges that unnamed defendants forged a release of responsibility form

18

and that defendant Green is responsible for the ineffective medical request policy that resulted in his delay in medical care. *Id*. at 8.

The ALJ fully addressed Campbell's complaints of inadequate medical care in his decision. The ALJ noted that Campbell "testified he was able to rinse his eyes from the sink in his cell immediately after the attack, and received a shower within twenty-four hours after the incident." ECF No. 12-6 at 14. The ALJ considered medical records showing that on June 15, 2020 at 6:27 a.m., Campbell "was seen for nursing assessment . . . patient refused nursing assessment and vital signs and signed ROR [Release of Responsibility]. Patient is stable at this time." *Id*.[7] Campbell testified that the signature was forged, but the ALJ rejected that assertion, noting that the signature was witnessed by two individuals and that a handwritten note on the front of the form is consistent with the typed statement on the form stating that "'Patient refused nursing assessment and vital signs and signed ROR.'" *Id*. The ALJ next noted that Campbell was seen by a nurse and a nurse practitioner on June 23, 2020, who both found "no redness or abnormality in his eyes," and that there was no evidence that the care he received, including "eye drops, a blood count, a hepatitis screen, and a herpes screen" was inappropriate. *Id*. at 15. Given this evidence, the ALJ found that Campbell "failed to prove that the DOC's acts or omissions violated the Eighth Amendment" with regard to his medical care. *Id*. at 16.

Based on the findings of the ALJ, which were affirmed by the Circuit Court, the doctrine of collateral estoppel precludes Campbell from pursuing his medical claims here. The claim of inadequate medical care is identical to the claim in the instant Complaint, and the ALJ fully explored the evidence and Campbell's testimony and reached a decision on the merits which was

---

[7] The ALJ cites to "DOC Ex. 1, p. 2"; this exhibit is not a part of the record in this case.

upheld by the Circuit Court.  As such, Campbell's claim for inadequate medical care must be dismissed.

### 2.  Failure to Protect

Collateral estoppel cannot, however, be applied to Campbell's failure to protect claim. First, the claims are not identical.  The ALJ considered Campbell's claim that "he was injured by DOC staff's negligence in that they failed to prevent Watson from exiting his cell attacking [Campbell] with feces" and that "DOC should have been on notice of Watson's feces-throwing propensity because Watson had engaged in similar behavior before."  ECF No. 12-6 at 16.  In his Complaint, Campbell alleges that Lts. Withrow and Brown not only knew Watson had a propensity to throw feces, but that Watson was specifically targeting certain inmates, to include Campbell, and that officers had a history of allowing him to do so.  He alleges specifically that Lt. Withrow caused the cell door to be opened releasing Watson and that Lts. Withrow and Brown purposefully allowed Watson to assault him and other inmates.  Whereas the ALJ considered whether prison staff was negligent, Campbell's Complaint alleges that they either purposefully released Watson or released him with deliberate indifference to the serious risk of harm he posed to Campbell and others based on his prior behavior and threats.

Additionally, the ALJ did not find that staff were not negligent, but rather that Campbell had not presented sufficient evidence to prove that they were negligent.  To that end, Campbell did not have a "full and fair opportunity to pursue his claim in the state administrative and judicial system."  *Batts v. Lee*, 949 F.Supp. 1229, 1233 (D.Md. 1996).  In *Batts*, upon which Defendants rely, collateral estoppel was found to apply to an ALJ's dismissal of a grievance filed by a prisoner against a corrections officer for retaliation.  *Id.*; ECF No. 12-1 at 29.  Like Campbell's case, the ALJ's decision was affirmed by the Circuit Court.  *Id.*  However, the *Batts* hearing included the

20

plaintiff's own testimony as well as that of the corrections officer he accused of retaliating against him. *Id.* At Campbell's hearing, no defendants or any other witness with personal knowledge of the events of June 14, 2020, provided testimony;[8] Campbell's request to review and present video evidence was denied for security reasons. ECF No. 12-6 at 5-18 and 34.

In addition to the testimony of the case manager, the ALJ relies on a staff log showing that a fire was set on June 14, 2022, at 8:03 a.m. and extinguished at 8:23 a.m. as well as the testimony of Case Manager Nichols, who was not present.[9]  ECF No. 12-6 at 16.  Nichols testified that "staff's first priority was to deal with the fire that was set on June 14, *before* the assailant ran around the tier that day throwing feces at the Grievant and others."  *Id.* (emphasis in original). Without video or witness testimony, the ALJ's analysis focuses primarily on the lack of evidence, including "the locations of the assailant and any correctional officers when the assailant set the fire, when he threw feces, and whether, when and if so why the assailant's cell door was unlocked before he threw the feces," finding that "[a]bsent clarity as to the locations of the assailant and officers at the time of the attack and the degree of the temporal proximity to the fire to the attack, [Campbell] did not prove that DOC staff was negligent in failing to prevent the attack," ultimately concluding that Campbell had not "sustained his burden of proving that DOC staff breached their duty of care . . . by failing to prevent the feces attack." *Id.* at 16-17.  In essence, the ALJ dismissed Campbell's grievance based almost entirely on his inability to discern what happened due to the lack of evidence presented.  Because Campbell presents a distinct claim in the instant case, and

[8] The records indicate that Lt. Withrow was issued a subpoena to testify at the hearing, but he did not.  ECF 12-6 at 10, 29, and 31-32.

[9] The staff log referenced by the ALJ is part of an exhibit that is not a part of the record in this case.  However, Campbell attached to his Complaint a document that may or may not be a copy of the staff log referenced by the ALJ. ECF No. 1-1.

21

because he was not provided an opportunity to fully explore the relevant issues, collateral estoppel does not apply to his failure to protect claim.[10]

**C.      Eighth Amendment Failure to Protect**

"The Eighth Amendment's prohibition on cruel and unusual punishments imposes certain basic duties on prison officials." *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).  Those duties "include maintaining humane conditions of confinement, including the provision of adequate medical care and . . . 'reasonable measures to guarantee the safety of the inmates.'" *Id*. "[N]ot every injury suffered by a prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015).  A two-part inquiry that includes both an objective and a subjective component must be satisfied before liability is established.  *See Raynor*, 817 F.3d at 127.

Objectively, the prisoner "must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury" or substantial risk of either injury. *Danser v. Stansberry*, 772 F.3d 340, 346–47 (4th Cir. 2014).  The objective inquiry requires this Court to "assess whether society considers the risk that the prisoner complains of to be so grave that it

---

[10] Defendants additionally argue that Campbell is precluded from pursuing claims regarding officers' actions during the disturbance on June 14, 2020, based on the findings in a different case.  *See* ECF 12-1 at 33-34.  In *Jones v. Commissioner of DPSCS, et al.,* Civil Action No. PX-21-61 (D.Md.), the Court found that officers did not fail to provide adequate medical care to Jones in response to smoke inhalation after several fires that occurred in June of 2020, including the fire on June 14, 2020. *Jones*, at ECF 1. Jones did not make any allegations with regard to Watson's actions or the feces assaults; rather, he  complained only that he was not protected from smoke inhalation or provided prompt medical attention following the fire notwithstanding Defendants' knowledge that he had asthma. *Id*. Jones and Campbell's common defendants include only Gang, Friday, and Adesiyan, who were found to have not personally participated in the violations alleged by Jones. *Id*. at ECF 23 at 7-8. The Court found that defendant Sgt. Greene, who is not a party to Campbell's suit, responded reasonably to the situation at hand and granted his unopposed motion for summary judgment. *Id*. 8-9. The findings in *Jones*, which do not address the same defendants or specific events as those addressed in Campbell's suit, do not preclude Campbell's claims.

violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993).

Subjectively, a plaintiff must establish that the prison official involved had "a sufficiently culpable state of mind" amounting to "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834. Evidence establishing a culpable state of mind requires actual knowledge of an excessive risk to the prisoner's safety or proof that prison officials were aware of facts from which an inference could be drawn that a substantial risk of serious harm exists and that the inference was drawn. *Id*. at 837. A plaintiff may "prove an official's actual knowledge of a substantial risk 'in the usual ways including inference from circumstantial evidence'" so that "'a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Raynor*, 817 F.3d at 128.

Campbell alleges that Lt. Withrow caused Watson to be released from his cell, knowing that he would likely assault him and other inmates with feces. ECF No. 1 at 4. He further alleges that Lts. Withrow and Brown stood idly by as the attacks against the inmates ensued, only employing pepper spray when Watson moved toward them. *Id*. at 5. In response, Defendants contend that officers took reasonable measures to provide for the safety and security of themselves and the inmates during a period of significant upheaval with an inmate setting fire, making threats, throwing feces, utilizing weapons, and encouraging other inmates to join him. ECF No. 12-1 at 45-46. Viewing the evidence in the light most favorable to Campbell, however, material issues of fact remain in dispute. As the ALJ explained, there is a "lack of more precise evidence as to the locations of the assailant and any correctional officers when the assailant set the fire, when he threw feces, and whether, when and if so why the assailant's cell door was unlocked before he

23

threw the feces." ECF No. 12-6 at 16-17. The record before this Court is not any clearer as to these issues.

While Campbell does not directly address the events in a declaration of his own, and his Complaint is unverified, he submits a Declaration in support of his discovery motion declaring that the video evidence would show that there was not an ongoing fire emergency and mass disturbance at the time Watson was released and assaulted him.[11] ECF No. 16 at 9-10. The timing of events are germane to the question of whether Lts. Withrow and Brown unnecessarily allowed Watson's assault to continue unabated or whether they acted promptly and reasonably under the circumstances created by the fire and general disturbances on the tier. The record is not clear as to the timing of Watson's release from his cell in relation to the fire, nor is the record clear as to whom was on the tier and when. As such, summary judgment on Campbell's claim that Lts. Withrow and Brown failed to protect him from the serious risk of harm posed by Watson is not appropriate on the current record. Lts. Withrow and Brown's Motion, construed as a motion for summary judgment, is denied as to Campbell's failure to protect claim.

**D.    Retaliation**

Campbell alleges that Lt. Withrow either "committed gross negligence" by allowing Watson to exit his cell without handcuffs or a staff escort or "directly participated in an act of retaliation against [him] for informing on the misconduct of the officers under his command." ECF No. 1 at 5. "The First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). To establish a

---

[11] Records suggest that video evidence exists. For example, an inmate rule violation report for another inmate indicates that Lt. Brown reviewed video from June 14, 2020, at 8:15 p.m. to determine that the inmate had thrown a liquid substance at another officer. ECF 12-3 at 29.

24

retaliation claim for exercising First Amendment rights, a plaintiff must show that (1) the plaintiff engaged in protected First Amendment activity; (2) the defendant took some action that adversely affected the First Amendment rights; and (3) there was a causal relationship between the protected activity and the defendants' conduct. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005). Here, Campbell simply speculates that Lt. Withrow's opening of Watson's cell door may have been in retaliation for his having filed ARP's against other officers. Without more, Campbell fails to state a claim for retaliation, and the Motion, construed as a motion to dismiss, will be granted as to this claim.[12]

E.    **Personal Participation and Supervisory Liability**

In a suit arising under 42 U.S.C. § 1983, the doctrine of respondeat superior generally does not apply and liability attaches only upon a defendant's personal participation in the constitutional violation. *See Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985); *see also Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). A supervisory official cannot be held liable for the acts of a subordinate unless the supervisor's "indifference or tacit authorization of subordinates' misconduct" can be deemed to have caused the injury to the plaintiff. *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). For a supervisor to be found liable for such acts, a plaintiff must prove that (1) the supervisor had actual or constructive knowledge that the subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to individuals like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to

---

[12] As to Campbell's state law claim for gross negligence, he has stated such a claim, but material issues of fact remain as to when, why and by whom was Watson released from his cell as outlined *supra* at Section C. Gross negligence is an "intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them. *Anne Arundel Cty. v. Reeves*, 2021 Md. Lexis 259, at *32 (2021) (citing *Barbre v. Pope*, 420 Md. 157, 187 (2007)). The motion will be denied as to this claim.

25

or tacit authorization of the subordinate's misconduct; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Id.* (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

Campbell alleges that he wrote letters to defendants Warden Gang and Security Chief Washington regarding Watson's propensity for throwing feces and other non-party officers' allowing him to do so. ECF No. 1 at 3. He alleges that they "failed to take disciplinary action; provide proper training; or curtail the known pattern of officers allowing inmates to assault other inmates without intervention or consequence." *Id*. Even assuming that Gang and Washington were aware of other officers having allowed Watson to assault other inmates on one occasion, Campbell does not provide any factual support for his allegation that they failed to discipline or train officers or that such failure was related to the June 14, 2020 assault on him. There is no allegation that Gang or Washington were personally involved in the events at issue. As such, Gang and Washington's motion, construed as a motion to dismiss, is granted.

Campbell's allegations against defendants Green, Walker, Jator, and Adesayin relate only to his claims for inadequate medical care. He does not allege their personal participation in his failure to protect claims. As the medical claims are dismissed on other grounds and there is no personal involvement alleged as to the failure to protect claim, Green, Walker, Jator, and Adesayin's motion will be granted.

**F.    Qualified Immunity**

Defendants' qualified immunity defense is unavailing at this stage of the litigation as to Lts. Withrow and Brown, because Campbell has alleged facts suggesting that the constitutional right was well-established at the time of the incidents at issue and that conduct allegedly violative of plaintiff's constitutional rights actually occurred. *See Willingham v. Crooke*, 412 F.3d 553, 559

26

(4th Cir. 2005). Defendants are of course free to reassert the defense at subsequent stages of the proceedings.

### G.    Non-dispositive Motions

Campbell has also filed a Motion for Appointment of Counsel. ECF No. 17. Campbell states that the motion "is preemptive and contingent," and he requests that it be granted "only if advance discovery is authorized." ECF No. 17 at 2. Under 28 U.S.C. § 1915(e)(1), the Court has discretion to appoint counsel for indigent civil litigants in exceptional circumstances. *See Bailey-El v. Hous. Auth. of Balt. City*, 185 F. Supp. 3d 661, 670 (D. Md. 2016) (citing *Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975), *aff'd in part, vacated on other grounds,* 686 F. App'x 228 (4th Cir. 2017). Whether exceptional circumstances exist is a fact-specific determination. *See Whisenant v. Yaum*, 739 F.2d 160, 163 (4th Cir. 1984)*, abrogated on other grounds by Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 298 (1989). Exceptional circumstances exist where (1) "the plaintiff 'has a colorable claim'" and (2) "considering the claim's objective complexity and the plaintiff's subjective abilities, . . . the plaintiff 'lacks the capacity to present it.'" *Jenkins v. Woodard*, 109 F.4th 242, 248 (4th Cir. 2024) (quoting *Whisenant*, 739 at 162). Campbell's ability to present his claims is exemplary given that he is not a lawyer. Nevertheless, as an incarcerated and indigent litigant, meaningful participation in the discovery process would be difficult if not impossible without the benefit of counsel. As such, Campbell's Motion will be granted.

Finally, Campbell moves for relief from paying the filing fee for the instant case, in addition to the fee he has largely already paid for the initial case he filed on this matter which was dismissed for failure to exhaust administrative remedies. ECF No. 22. Campbell cites a Sixth Circuit case which found that a plaintiff should not have to pay a second filing fee under similar circumstances. *Id*. (citing *Owens v. Keeling*, 461 F.3d 763 (6th Cir. 2006)). The Fourth Circuit,

however, has not ruled similarly. *See Ellis v. Kitchin, et al.*, 2010 WL 4071874, *1 (E.D. Va. June 9, 2010) (finding that the Fourth Circuit "has not followed *Owens* or ruled similarly" and that the plain language of 28 U.S.C. § 1914(a), which specifically excepts habeas corpus cases, requires payment of a new filing fee.). Additionally, the *Owens* complaint was dismissed *sua sponte* prior to service. In contrast, *Campbell I* was litigated through summary judgment on the issue of exhaustion. *Campbell I*, Civil Action No. 22-cv-636-SAG at ECF No. 60. Campbell's Motion to Excuse Filing Fee is denied.

## CONCLUSION

By separate order which follows, the Court DENIES in part and GRANTS in part Defendants' motion to dismiss, or in the alternative, for summary judgment. The Motion is granted as to Defendants Green, Gang, Washington, Walker, Jator, and Adesayin. The Motion is denied as to the failure to protect claims against Defendants Withrow and Brown and granted as to the medical claims against them. Campbell's Rule 56(d) Motion is granted in part as outlined above. His Motion for Appointment of Counsel is granted, and Motion to Excuse Filing Fee is denied.


March 25, 2026
Date

/s/
Stephanie A. Gallagher
United States District Judge

28